**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN KENNY,<br>　　　　　Plaintiff,<br><br>v.<br><br>ONWARD SEARCH and TANDEMSEVEN,<br>　　　　　Defendants. | Civil Action No.: 15-456 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants Onward Search and TandemSeven's ("Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Federal Rule of Civil Procedure 56.1 (ECF No. 50). Plaintiff John Kenny has submitted an opposition (ECF No. 54), to which Defendants have replied to (ECF No. 58). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment.

## I. BACKGROUND[1]

### A. The Parties

Defendant "Onward is a staffing company for digital, creative, and technology talent, and [a] provider of recruitment and staffing for digital marketing and creative talent." Def SMF ¶ 1. As a staffing company, Defendant Onward connects certain qualified information technology professionals with job opportunities at various companies throughout the United States and Europe. *Id.* Defendant Tandem is a user experience ("UX")[2] company "that provides design and development services and market-leading UX products." *Id.* at ¶ 3. Defendants Tandem and Onward have worked together on at least one prior occasion. *Id.* Plaintiff is a UX professional with at least 16 years of experience in the industry. *Id.* at ¶ 4.

### B. Pertinent Facts

As noted, Plaintiff is a UX professional with approximately 16 years of experience in the field. Def. SMF ¶ 4. Throughout his career he has developed efficient information architect and UX processes which focus on websites, interactive banner ads, and various mobile mediums. *Id.* at ¶ 5. For approximately ten years, Plaintiff operated as an independent contractor who worked on short-term assignments. *Id.* at ¶ 7. During this time period, Plaintiff performed approximately 22 assignments as an independent contractor. *Id.* He also held two separate full-time positions,

---

[1] These background facts are taken from the parties' statements of material facts, pursuant to Local Civil Rule 56.1. (ECF No. 50-2, Defendants' Rule 56.1 Statement of Facts ("Def. SMF"); ECF No. 54-2, Plaintiff's Rule 56.1 Statement of Facts ("Pl. SMF"); ECF No. 54-3, Plaintiff's Responses to Defendants' Statement of Material Facts ("Pl. Opp. SMF"); ECF No. 58-1, Defendant's Counter Statement of Facts ("Def. Opp. SMF")). To the extent that Plaintiff admits to any Material Facts as stated by Defendant, the Court will cite only to "Def. SMF" and the relevant paragraph number. The Court will "disregard all factual and legal arguments, opinions and any other portions of the 56.1 Statement which extend beyond statements of facts." *Globespanvirata, Inc. v. Tex. Instrument, Inc.*, 2005 U.S. Dist. LEXIS 27820, at *10 (D.N.J. Nov. 10, 2005); *see also* L. Civ. R. 56.1 ("Each statement of material facts . . . shall not contain legal argument or conclusions of law.").

[2] The parties agree that UX does not have a concrete definition, but that the UX industry is generally targeted at creating "user friendly" experiences for the end-user of the subject technology. Def. SMF at n. 2; Pl. Opp. SMF 1.

2

neither of which lasted more than one year. *Id.* Plaintiff explicitly testified that he understood the difference between an independent contractor and a full-time employee, based on his extensive experience as an independent contractor. *Id.* at ¶ 8.

As an independent contractor, Plaintiff conducted business through two separate companies. Def. SMF ¶ 10. Prior to 2010, Plaintiff's business was conducted through a sole proprietorship called JK Design Partners. *Id.* Since 2010, Plaintiff has conducted business as an independent contractor through his limited liability company, Flex IA/UX, LLC ("Flex"). *Id.* As an independent contractor, Plaintiff utilized the services of staffing agencies to find assignments. *Id.* at ¶ 11. When a staffing agency placed Plaintiff with a client, he would execute a written agreement forwarded by said agency. *Id.* at ¶ 12. Plaintiff specifically testified, and concedes in his opposition papers, that whenever he performed work through a staffing agency he always signed a written agreement that was always provided by said agency. *Id.* at ¶¶ 12-13.

In November 2013, Plaintiff was hired as a full-time employee by Prudential as a UX Designer. Def. SMF ¶ 16. He was an at-will employee with a base salary of $117,000. *Id.* at ¶¶ 16-17. At some point in May of 2014, Prudential began assigning some of Plaintiff's projects to a third-party consulting firm to Plaintiff's dissatisfaction. *Id.* at ¶¶ 19-20.

While still working at Prudential, Plaintiff came into contact with Justin Court, who at the time was a Senior Account Executive with Defendant Onward. Def. SMF ¶ 21. Plaintiff relayed his dissatisfaction with his current position at Prudential, and was "fielding other opportunities. *Id.* at ¶ 21.[3] On August 18, 2014, Court sent Plaintiff an email regarding a potential "freelance

---

[3] The Court notes that Plaintiff's Response to Defendants' Statement of Undisputed Material Facts responds to Def. SMF. ¶ 21 in the following manner: "Rejected. See below." *See* Pl. Opp. SMF ¶ 21. However, nowhere within Plaintiff's Response to Defendants' Statement of Undisputed Material Facts or Plaintiff's own Statement of Undisputed Material Facts is there any explanation as to why this paragraph was rejected. *See* Pl. Opp SMF; Pl.

3

position for an agency that sits onsite in Jersey City." *Id.* at ¶ 25. Court and Plaintiff discussed the potential assignment and Plaintiff's desired compensation. *Id.* at ¶ 26.

On August 19, 2014, Defendant Onward referred Plaintiff to Defendant Tandem for a specific assignment. Def. SMF ¶ 27. On that same date, Plaintiff and Court exchanged emails regarding Flex's independent contractor insurance policy. *Id.* at ¶ 28. Court advised Plaintiff on September 2, 2014 that Defendant Tandem is interested in interviewing Plaintiff. *Id.* at ¶ 29. Thereafter, on September 2, 2014, Plaintiff had a 25-to-30-minute telephone interview with Laurie Tvedt, Defendant Tandem's Hiring Manager and UX Manager. *Id.* at ¶ 30. Plaintiff and Tvedt did not go into great detail about the project. *Id.* Rather, the conversation was "more about 'gauging personality.'" *Id.*

The following day, September 5, 2014, Plaintiff had a second telephone interview with Defendant Tandem's Vice President of Design, David Clark. Def. SMF ¶ 31. The interview focused on Plaintiff's experience and prior projects. *Id.* Clark referenced a "long-term assignment" Defendant Tandem was preparing the necessary forms. *Id.* On September 9, 2016, Plaintiff had another telephone interview with Defendant Tandem's Principal User Experience Architect, Kevin Bray. *Id.* at ¶ 32. Bray's interview was a much more detailed probe of Plaintiff's experience. *Id.*

Plaintiff then had an in-person interview on September 17, 2016, where he met with Tvedt, Bray, and David Cowing, Defendant Tandem's Managing Director. Def. SMF ¶ 33. At said

---

SMF. Accordingly, the Court treats the statements contained at Def. SMF ¶ 21 as undisputed. *See* L. Civ. R. 56.1(a)("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; *any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.*")(emphasis added).

4

interview, Plaintiff was presented with a project scope for a specific product. *Id.* at ¶ 34. A question and answer period took place, followed by Plaintiff "white-boarding" ideas. *Id.* Defendant Tandem then explained the specific project it was hiring for was for "the creation of a document repository for a consortium of financial institutions." *Id.* at ¶ 35. No specifics regarding the assignment were discussed at the in-person interview. *Id.* at ¶ 36. Moreover, the parties did not discuss compensation or contracts. *Id.* at ¶ 37. Finally, Plaintiff testified he was not offered the position during said interview. *Id.* at ¶ 39.

After the interview, Plaintiff began driving home. Def. SMF. ¶ 40. During his drive home, Plaintiff spoke with Court twice. *Id.* Court asked Plaintiff how the in-person interview went and whether Plaintiff had any interest in the position during the first conversation. *Id.* at ¶ 41. During said conversation, Plaintiff asked Court "if they offered me the position, would [Court] be allowed to accept the offer on [his] behalf." *Id.* at ¶ 42. During the second conversation, shortly after the first phone conversation, Court advised Plaintiff that Defendant Tandem "want[ed]" Plaintiff and asked when he could start. *Id.* at ¶ 46. Court also expressed Plaintiff "nailed it" and he never "had a candidate hired this quickly." *Id.*

Court never discussed the material terms of Plaintiff's potential placement. Def. SMF ¶ 46. Further, Court advised Plaintiff he was "putting [Plaintiff] in for $85 an hour." *Id.* Moreover, Court stated he would get Plaintiff the paperwork "in a few days." *Id.* Court never explicitly expressed that Plaintiff was "accepted" for the freelance assignment. *Id.* at ¶ 47. Additionally, Court never provided Plaintiff with a start date and did not have any specific details regarding the compensation or duration of the assignment. *Id.* at ¶ 48.

5

Upon returning to his home, Plaintiff received an email from Court advising him that the position "was subject to financial approval." Def. SMF ¶ 50. In that same email, Court stated *"Plaintiff should continue to wait to give his resignation notice to Prudential"*[4] because *"financial approval 'ha[d] to come first.'" Id.* at ¶¶ 51-52 (emphasis added). Plaintiff, based on his prior experience as an independent contractor, understood that he may not receive an offer based on financial approval. *See* Boyarsky Decl., Ex. 16 (Plaintiff's email to Court in response to the fact that the assignment was subject to financial approval, wherein Plaintiff stated "[t]hat scares me. *The last time I left a salaried job for a long term contract position, they told me they had over a million dollar budget for the project. But when I started the budget got cut to 200k and my work on the project went from a projection of a year to less than a month.* I can't put my wife through that again. *Please find out how long it will take to get the budget approval. Understand I need to tread cautiously.*")(emphasis added); *see also* Def. SMF ¶¶ 54-56. Court responded to Plaintiff's inquiry regarding the budget approval and said "[t]he money is there, just needs to be approved." Def. SMF ¶ 57.

In a separate email, Court provided Plaintiff with a contact person at Defendant Tandem, Jessica George, in case Plaintiff had any follow-up questions. Def. SMF ¶ 58. The purpose of providing Plaintiff with George's contact information was to assure he was "fully aware of what's going on and fe[lt] as comfortable as possible." *Id.* at ¶ 59. Despite being told that the funds were available, Plaintiff was never told that financial approval was obtained. *Id.* at ¶ 62. In a third email, Court forwarded an email to Plaintiff from George asking for Plaintiff to put together a biography. *Id.* at ¶ 63. Plaintiff never submitted the requested bio. *Id.* at ¶ 64.

---

[4] For the same reasons set forth at n. 3, *supra*, the Court shall treat this statement as undisputed.

Based on his experience as an independent contractor, Plaintiff expected a written agreement from Defendant Onward regarding the freelance position with Defendant Tandem. Def. SMF ¶ 65. Without receiving any confirmation or paperwork from either Defendant, Plaintiff submitted his resignation to Prudential on September 18, 2014. *Id.* at ¶¶ 65-66. The resignation letter was addressed to Kaylan Ramanathan, "the overall manager of Plaintiff's department," who was on a two-week vacation effective September 18, 2014. *Id.* at ¶ 67. Plaintiff left the letter on the desk of Rajesh Cutti, Plaintiff's immediate supervisor. *Id.* at ¶ 69. Cutti was also vacationing in India for two weeks. *Id.* at ¶ 66. Aside from the resignation letter, Plaintiff never communicated his resignation to Ramanathan, Cutti, or Prudential's Human Resources Department. *Id.* at ¶¶ 68, 71. Plaintiff never considered nor attempted to rescind his resignation at any time. *Id.* at ¶¶ 72-73.

The following day, September 19, 2014, Court left Plaintiff a voicemail advising him that Defendant Tandem could not offer him the position. Def. SMF ¶ 76. Court explained that the assignment was for one of Defendant Tandem's clients and that all "personnel placements on projects are subject to client approval."[5] *Id.* at ¶¶ 77-78. Accordingly, the specific project Plaintiff interviewed for was ultimately subject to financial approval by Defendant Tandem's client.[6] *Id.* at ¶ 79. The scope of the project for which Plaintiff interviewed had changed by the time the interviews concluded.[7] *Id.* Thus, Defendant Tandem's client believed that bringing on additional

---

[5] For the same reasons set forth at n. 3, *supra*, the Court shall treat this statement as undisputed.
[6] For the same reasons set forth at n. 3, *supra*, the Court shall treat this statement as undisputed.
[7] For the same reasons set forth at n. 3, *supra*, the Court shall treat this statement as undisputed.

resources was no longer a financially wise decision.[8] *Id.* Hence, Defendant Tandem decided not to fill the position Plaintiff was being considered for.[9] *Id.*

Defendant Tandem had a specific procedure for extending an offer to a candidate, which never occurred here, since Defendant Tandem could not extend Plaintiff said offer.[10] Def. SMF ¶ 80. Typically, Defendant Tandem submits each potential candidate's biography to its client prior to approval and does not extend an offer to a candidate until the client approves same.[11] *Id.* Additionally, "all offers are conditioned upon the candidate passing a drug and/or background check – neither of which were even discussed with Plaintiff because the process had not advanced that far."[12] *Id.*

Thereafter, Court continued to assist Plaintiff in looking for other opportunities, for which Plaintiff was grateful. Def. SMF ¶¶ 81-82. Six weeks after his separation from Prudential, Plaintiff began working as a freelancer for Grey Healthcare Group. *Id.* at ¶ 83. Consistent with Plaintiff's employment history as a freelancer/independent contractor, Plaintiff received and signed an offer letter, from Grey Healthcare Group, that contained the duration of the assignment and compensation as well as other terms. *Id.* at ¶ 84. Thereafter, Plaintiff returned to work for Prudential as an independent contractor. *Id.* at ¶ 85.

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled

---

[8] For the same reasons set forth at n. 3, *supra*, the Court shall treat this statement as undisputed.
[9] For the same reasons set forth at n. 3, *supra*, the Court shall treat this statement as undisputed.
[10] For the same reasons set forth at n. 3, *supra*, the Court shall treat this statement as undisputed.
[11] For the same reasons set forth at n. 3, *supra*, the Court shall treat this statement as undisputed.
[12] For the same reasons set forth at n. 3, *supra*, the Court shall treat this statement as undisputed.

8

to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

### III.   ANALYSIS

Plaintiff's remaining viable claims are[13]: 1) breach of contract; 2) fraudulent misrepresentation; and 3) promissory estoppel. The Court discusses each cause of action separately.

#### A. Breach of Contract

A Plaintiff bringing an action for breach of contract under New Jersey law must demonstrate that: 1) the parties entered into a valid contract; 2) the defendant failed to perform his obligations under the contract; and 3) that the plaintiff sustained damages as a result. *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (N.J. Super. Ct. App. Div. 2007). A contract arises from an offer and acceptance, and must be "sufficiently definite that the performance to be rendered by

---

[13] Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and violations of the private employment agency and consumer fraud acts were dismissed, with prejudice, on July 15, 2015. *See* ECF No. 21-22.

each party can be ascertained with reasonable certainty." *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (N.J. Sup. Ct. 1992)(internal citations omitted). Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created enforceable contract. *Id.* at 435. "*Where the parties do not agree to one or more essential terms, however, Courts generally hold that the agreement is unenforceable.*" *Id.* at 435 (emphasis added); *see also Malakar Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*, 163 N.J. Super. 463, 474 (N.J. Super. Ct. App. Div. 1978), *certif. denied*, 79 N.J. 788 (N.J. Sup. Ct. 1979)(stating that an agreement "so deficient in the specification of its essential terms that the performance by each party cannot be ascertained with reasonable certain is not a contract, and clearly is not an enforceable one."). The essential terms include "subject matter, payment terms, quantity, quality, duration, and specifying what works should be done." *Acme Plastics of N.J., Inc. v. Int'l Fixtures LTD*, 2007 U.S. Dist. LEXIS 33001, *8 (D.N.J. May 4, 2007). The New Jersey Supreme Court has uniformly held that "it is requisite that there be an unqualified acceptance to conclude the manifestation of assent." *Johnson & Johnson v. Charmley Drug Co.*, 11 N.J. 526, 539 (N.J. Sup. Ct. 1953).

Here, the Court finds that no valid contract between the parties was ever formed. It is undisputed that Plaintiff never received any formal written agreement from either Defendant. Plaintiff, an independent contractor with many years of experience in the field, testified that throughout his career he never entered into any sort of independent contractor employment relationship without signing some document. Accordingly, Plaintiff should have, and did, expect to sign a written agreement memorializing his employment with Defendant Tandem through Defendant Onward.

Plaintiff's attempt to construct a contract out of the conversations, emails, and circumstances surrounding said communications between himself and Defendants is unpersuasive for several reasons. First, as noted, Plaintiff expected a written agreement for employment which he never received. Next, neither Defendant Onward nor Defendant Tandem ever made any offer of employment. Thus, there was no offer of employment for Plaintiff to accept. Additionally, Court explicitly told Plaintiff that the position was subject to financial approval and advised Plaintiff to not resign from Prudential until same was processed. Plaintiff acknowledged the email and explained that he understood how the process worked, as he was in a similar position previously where the scope of the project changed. Therefore, Plaintiff was aware that no offer of employment, which Plaintiff could have accepted, was ever extended.

Additionally, if the Court was convinced an offer was made, there is no evidence of any acceptance. Plaintiff attempts to rely on his communications with Court where he asked Court to accept the offer if same was ever extended. However, the record is devoid of any evidence that Court accepted any "offer." Rather, the record shows that no offer was extended, and even if one was extended, neither Court nor Plaintiff ever accepted same.

Finally, even if the Court were to find that an offer of employment was made, such an offer lacks the essential terms requisite for an enforceable contract to exist. Nowhere within the record is there any evidence that Plaintiff was made aware of the actual scope of the project, what his compensation would be, his start date, or the duration of the project. The closest "term" that can be gleaned from the record is reference by Plaintiff that Defendant Tandem "plan[ned] ... to have someone in the seat for 7+ months." However, when viewing the evidence in a light most

11

favorable to Plaintiff, no other essential terms can be gleaned from the record. Thus, no enforceable contract exists between the parties.

Therefore, Plaintiff's breach of contract claim must be dismissed. Plaintiff cannot establish that he ever received any offer of employment from Defendants. Even if Plaintiff could prove same, Plaintiff is incapable of showing that such an offer was accepted. Finally, the "agreement" fails to continue the necessary essential terms that it is unenforceable. A claim for breach of contract cannot lie without proof that a valid and enforceable contract existed. Thus, Defendants are entitled to judgment as a matter of law and their Motion for Summary Judgment as to Plaintiff's breach of contract claim is granted. The claim is dismissed with prejudice.

### B. Negligent Misrepresentation

Next, Plaintiff seeks damages for negligent misrepresentation. Specifically, Plaintiff claims that his communications with Defendants "'negligently induced' [him] into accepting an offer of employment." Def. SMF ¶ 99. For a claim of negligent misrepresentation, Plaintiff must allege that: "(1) the defendant negligently provided false information; (2) the plaintiff was a reasonably foreseeable recipient of that information; (3) the plaintiff justifiably relied on the information; and (4) the false statements were a proximate cause of the plaintiff's damages." *Gaelick v. Conn. Gen. Life Ins. Co.*, 2011 U.S. Dist. LEXIS 95254, 2011 WL 3794228, at *5 (D.N.J. Aug. 25, 2011) (citing *McCall v. Metro. Life Ins.*, 956 F.Supp. 1172, 1186 (D.N.J. 1996)). Accordingly, the Court's threshold inquiry is whether Defendants negligently made "'an incorrect statement[]." *Karu v. Feldman*, 119 N.J. 135, 147 (N.J. Sup. Ct. 1990)(quoting *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 334 (N.J. Sup. Ct. 1983)).

Plaintiff's claim for negligent misrepresentation fails because Plaintiff cannot point to a single *false* statement made by either Defendants. Indeed, neither Defendant Onward, through Court, nor Defendant Tandem, through any of its employees, ever made affirmative statements that Plaintiff was being offered the position. Moreover, the communications between Plaintiff and Defendants made it clear that no offer would be made prior to financial approval, which never materialized. None of these statements, conversations, nor communications were false. Plaintiff's subjective understanding is insufficient to overcome summary judgement. *See Pepe v. Rival Co.*, 85 F. Supp. 2d 349, 367 (D.N.J. 1999)(stating that "[u]nsupported allegations, *subjective beliefs*, or argument alone ... cannot forestall summary judgment.")(emphasis added). Hence, regardless of Plaintiff's subjective understanding of the circumstances, no false statement was ever made to him.

Additionally, Plaintiff is incapable of establishing justifiable reliance to survive summary judgment for two reasons. *See Alexander v. CIGNA Corp.*, 991 F. Supp., 427, 440 (D.N.J. 1997), *aff'd*, 172 F.3d 859 (3d Cir. 1998). Plaintiff must show he reasonably relied on the alleged negligently made false statements. *See Zielkinski v. Prof' Appraisal Assocs.*, 326 N.J. Super. 219, 227 (N.J. Super. Ct. App. Div. 1999)(stating that to overcome summary judgment with regards to a negligent misrepresentation a plaintiff must show his or her reliance was reasonable as a matter of law). First, Plaintiff was involved in similar employment situations on numerous occasions throughout his career. He personally expressed his fear that the offer would not materialize or would be altered based on his past experiences. In other words, Plaintiff was well versed in the freelancer/independent contractor process and knew that financial approval could alter the potential position, as well as the fact that a written offer was always involved in such relationships.

Thus, based on his personal knowledge, Plaintiff could not have reasonably believed that email and verbal communications, none which ever included a written offer, constituted an offer of employment.

Second, Court made clear statements to Plaintiff that no concrete offer was made, but rather that Defendant Tandem was interested in hiring him. Court advised Plaintiff that Defendant Tandem needed to seek financial approval prior to extending an offer of employment. Further, Court definitively told Plaintiff not to resign from Prudential until said offer was extended.

Accordingly, Plaintiff's negligent misrepresentation claims fails, as there is no genuine issue of material fact that Defendants ever made any false statements to Plaintiff. Moreover, Plaintiff cannot establish justifiable reliance. Therefore, Defendants are entitled to judgment as a matter of law and their Motion for Summary Judgment with respect to Plaintiff's negligent misrepresentation claim is granted. The claim is dismissed with prejudice.

### C. Promissory Estoppel

Finally, Plaintiff seeks damages for promissory estoppel. To state a claim for promissory estoppel, Plaintiff must allege that: (1) *there was a clear and definite promise by the promisor*; (2) made with the expectation that the promisee will rely thereon; (3) that the promisee reasonably relied on the promise; (4) to the promisee's definite and substantial detriment. *Toll Bros. v. Bd. of Chosen Freeholders of Cty. of Burlington*, 194 N.J. 223, 253 (N.J. Sup. Ct. 2007)(emphasis added); *see also Fischer v. Allied Signal Corp.*, 974 F. Supp. 797, 809 (D.N.J. 1997). The first element, "a clear and definite promise by the promisor," is the "*sine qua non* for applicability of this theory recovery." *Malaker Corp., supra* at 479. This first element requires a "promise of sufficient definition." *Id.*

14

Similar to Plaintiff's negligent misrepresentation claim, Plaintiff's cause of action for promissory estoppel also fails. Plaintiff cannot establish a *definitive* promise of employment. The record shows Plaintiff was told that any employment opportunity was subject to financial approval. Further, Court explicitly told Plaintiff to wait until the final financial approval was provided before resigning from Prudential. Thus, Plaintiff was aware that financial approval was necessary before any offer would be presented, and that same was not given as of the date of his resignation. Plaintiff's claim for promissory estoppel cannot proceed without a definite promise of employment.

Additionally, even if this Court were to construe all the communications between the parties as a *definitive* promise, Plaintiff cannot show he reasonably relied on same. This is because Plaintiff is an experienced UX professional. As an experienced UX independent contractor, Plaintiff testified he never accepted an assignment without a written contract. Moreover, Plaintiff expressed his understanding of the process in an email to Court, wherein he stated he was being cautious since he understood that the scope of any potential job may change based on the finances of a company. Hence, Plaintiff could not have reasonably relied on any promise as his experience as a UX independent contractor provided him with an understanding that no offer of employment was final until a written agreement was produced by either the staffing company or the prospective employer.

Therefore, Plaintiff cannot maintain a claim for promissory estoppel. Plaintiff is unable to establish a *definitive* promise by either Defendant. Even if such a promise could be construed from the record, Plaintiff's own personal experiences and understanding of the subject industry establish that he could not have reasonably relied on such an implicit promise. Thus, Defendants' Motion

for Summary Judgment with respect to the promissory estoppel claim is granted and the claim is dismissed with prejudice.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment is granted in its entirety and Plaintiff's complaint is hereby dismissed with prejudice.

DATED: November 23, 2016

_____
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE